# IN THE COURT OF APPEALS OF IOWA

———————————

No. 26-0050
Filed March 11, 2026

———————————

**In the Interest of G.S., Minor Child,**

**D.B., Mother,**
Appellant,

**B.S., Father,**
Appellant.

———————————

Appeal from the Iowa District Court for Shelby County,
The Honorable Charles D. Fagan, Judge.

———————————

**AFFIRMED ON BOTH APPEALS**

———————————

Sara E. Benson of Meldrum & Benson Law, P.C., Council Bluffs, attorney for appellant mother.

David J. Larson of Hanson, Sulhoff & Larson, Avoca, attorney for appellant father.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, attorneys for appellee State.

William T. Early, Harlan, attorney and guardian ad litem for minor child.

———————————

Considered without oral argument
by Greer, P.J., and Schumacher and Chicchelly, JJ.
Opinion by Schumacher, J.

**SCHUMACHER, Judge.**

Parents separately appeal the termination of their parental rights to their child, born in 2023. We conclude the record supports grounds for termination, termination is in the child's best interests, the parents waived their reasonable-efforts claims, and additional time for reunification efforts is unwarranted. Accordingly, we affirm on both appeals.

## BACKGROUND FACTS & PROCEEDINGS

This family most recently came to the attention of the Iowa Department of Health and Human Services in April 2024, upon reports that the parents were using methamphetamine while caring for their five-month-old son, G.S. There were also concerns about domestic violence between the parents in the family home. The father was arrested for domestic abuse assault, following an argument with the mother over text message about "getting high" together, and then kicking the mother in the stomach and knocking her down in front of the child. Founded child abuse assessments were issued following this incident, and a no-contact order was entered between the parents.

The mother stated she last used methamphetamine before becoming pregnant with G.S., but then she acknowledged she tested positive for the drug at the time of G.S.'s birth. The mother agreed to a safety plan where the child would be placed at her father's home or her mother's home.[1] After the mother tested positive for methamphetamine in June, the department required her contact with the child to be supervised. The child was adjudicated in need of assistance.

---

[1] The child began living with the maternal grandfather, but the maternal grandmother also helped care for the child.

Numerous services were offered to the parents, but neither showed progress in their ability to safely care for the child. Meanwhile, the no-contact order between the parents was dropped, and they resumed their relationship. They failed to attend requested drug screens or complete substance-use or mental-health evaluations.

Following a review hearing in January 2025, the court entered an order noting the following:

> [The mother] is able to have nearly unlimited visitation with [G.S.] as long as she is supervised by [one of her family members]. However, the family has reported that she has had little contact with [G.S.] through family supervision since the No Contact Order was closed and she moved in with [the father] at the end of October.
>
> [The father] has weekly supervised visitation through Boys Town for four hours per week, and [the mother] participates in these visits.
>
> . . . .
>
> Both parents indicate they want to achieve reunification with [G.S.]; however, their actions do not reflect their goal. Neither [the father] nor [the mother] have followed through with drug screens, substance use evaluations, or mental health evaluations. With little progress made toward reunification as well as the very young age of [G.S.], the Department is recommending that a permanency hearing being [sic] held, changing the goal from reunification to adoption through the termination of parental rights.

For the next six months, the parents either no-showed for their drug screens or tested positive for methamphetamine, except for one negative "Lab based UA 9 panel" by the father in May. The State initiated termination proceedings in June. The mother entered inpatient treatment in July.[2] She completed treatment in August and obtained an evaluation, which

---

[2] She tested positive for methamphetamine at the time of admission.

recommended that she participate in intensive outpatient treatment. The mother's drug screen in September was negative for all substances. The court entered an order continuing the termination hearing "due to recent significant progress by the mother."

But by October, the mother's counselor reported she had been unsuccessfully discharged from treatment due to non-attendance and she would need to obtain another evaluation to restart services. The mother did not attend requested drug screens in October. Meanwhile, the father had failed to appear for his last twelve drug screens.

The termination hearing took place in November. The father did not appear. Both parents' counsel moved to continue the hearing, which the court denied, noting it had already continued the matter "to today's date." The court also denied the mother's request for an extension of time for reunification efforts. The child had been out of the parents' custody for approximately eighteen months. The department caseworker reported the child was "a happy, energetic little boy," who was "in good health, hitting all milestones." Since removal, he had been with the maternal grandfather, who was willing to adopt him.

Following the hearing, the court entered an order terminating the parents' parental rights. The parents separately appeal.

## ISSUES ON APPEAL

We employ the familiar statutory framework analysis on our de novo review of this case. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

## I.    Grounds for Termination

The court terminated the parents' parental rights on three grounds—those set forth in Iowa Code section 232.116(1)(e), (h), and (*l*) (2025). Although they challenge each of those grounds, we need only find termination proper on one ground to affirm with respect to each parent. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).

We focus on section 232.116(1)(h). The parents claim the State presented insufficient proof of the fourth element, which requires clear and convincing evidence that the child cannot be returned to parental custody at the present time as provided in section 232.102.[3] Iowa Code § 232.116(1)(h)(4); *In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017) (finding "at the present time" means the date of the termination hearing).

The mother acknowledges "concerns remain" but claims the State "did not present evidence that returning G.S. to [her] care under continued supervision or relative oversight would have exposed the child to imminent harm or unsafe conditions." Similarly, the father maintains the State failed to "meaningfully assess[] whether G.S. could be safely returned to [his] care with appropriate supervision or supports."

However, the question is whether the child could be safely returned to the parents' respective custody at the time of the termination hearing, not whether the parents are able to care for the child under the department's oversight or otherwise. The record shows G.S. would be in danger if he was returned to either parent's custody. The parents have serious unaddressed

---

[3] In separate claims, the parents also argue the State failed to prove the child could not be returned to their custody "as provided in section 232.102." We address these claims as part of our grounds-for-termination analysis.

substance-use problems, and neither has been able to maintain long-term sobriety. The mother acknowledged using methamphetamine at the time of the child's birth, and she tested positive for substances throughout these proceedings. Despite her successful completion of inpatient treatment, she failed to attend treatment afterward and no-showed for her most recent requested drug screen. The father no-showed for most of his requested drug screens. "We presume these missed tests would have been positive for illegal substances." *In re R.A.*, No. 21-0746, 2021 WL 4891011, at \*1 (Iowa Ct. App. Oct. 20, 2021). The parents have also failed to meaningfully address domestic-violence concerns between them. Returning G.S. to the parents' custody would place him at risk of abuse or neglect, the kind of harms that would justify a child-in-need-of-assistance adjudication. Under this record, the State proved by clear and convincing evidence the elements supporting termination under Iowa Code section 232.1161(1)(h) with respect to both parents.

## II.   Reasonable Efforts

Pivoting, the parents both maintain that the department failed to make reasonable efforts toward reunification. Indeed, the department has a duty to make "reasonable efforts" towards reunification by working "to preserve and unify a family prior to the out-of-home placement of a child in foster care or to eliminate the need for removal of the child or make it possible for the child to safely return to the family's home." Iowa Code § 232.102A(1)(a). But "parents have a responsibility to object when they claim the nature or extent of services is inadequate" so the department can make appropriate changes. *In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017). "In general, if a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding." *Id.* (citation

omitted). Here, we conclude the parents waived their challenges because they failed to object or otherwise bring the issue of reasonable efforts to the department's attention. *In re A.B.*, No. 25-1956, 2026 WL 380405, at *3 (Iowa Ct. App. Feb. 11, 2026).

## III. Best Interests

We next turn to the parents' challenges as to whether termination was in the child's best interests. In doing so, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). We look to "what the future holds for the child if returned to the parents. When making this decision, we look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future." *In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020) (citation omitted).

We conclude termination of the parents' parental rights is in the child's best interest. The mother has continued to use methamphetamine throughout this proceeding and despite attempts to stay sober, she has been unable to do so on a demonstrated, sustained basis. The father has not shown a genuine attempt to stay sober, as he did not acknowledge a substance-use problem, and he missed most of his drug screens. Neither parent has demonstrated an ability to put the child's need for safety ahead of their substance-use or domestic-violence issues. *See In re T.B.*, 604 N.W.2d 660, 662 (Iowa 2000) (holding a parent's past actions are evidence of the quality of his or her future care). These concerns weigh in favor of finding that termination is in G.S.'s best interests. *In re J.P.*, No. 19-1633, 2020 WL 110425, at *2 (Iowa Ct. App. Jan. 9, 2020) ("A parent's methamphetamine

use, in itself, creates a dangerous environment for children."). We find termination of the parents' rights is in the child's best interests.

To the extent that the parents seek a guardianship because the child is in a relative placement with the maternal grandfather, [4] we conclude a guardianship is not preferable to termination in this case. *See In re B.T.*, 849 N.W.2d 29, 32 (Iowa Ct. App. 2017) ("[G]uardianship is not a legally preferable alternative to termination."); *see also In re A.S.*, 906 N.W.2d 467, 478 (Iowa 2018) (discussing factors relevant to guardianship determinations). Indeed, G.S. resides with his maternal grandfather who is willing to serve as a permanent home for him. But guardianships often provide less stability because they can be changed or terminated. *In re A.M.*, No. 20-1008, 2020 WL 7021576, at *3 (Iowa Ct. App. Nov. 30, 2020). Under these circumstances, we find termination best protects the child and achieves the necessary stability.

## IV.   Additional Time

The parents request additional time to participate in reunification efforts. *See* Iowa Code § 232.117(5) (permitting the court to deny termination and enter a permanency order under section 232.104); *see also id.* § 232.104(2)(b) (providing a permanency option of giving a parent an additional six months to work toward reunification). An extension of time is

---

[4] Both parents raise this claim under the best-interests analysis, arguing termination is not in the child's best interests due to his stable relative placement and the potential that a guardianship could be established. Neither parent raises exceptions-to-termination claims under section 232.116(3). We review only the issues raised and briefed by the parent. *See In re A.H.*, No. 21-1189, 2022 WL 246258, at *1 (Iowa Ct. App. Jan. 27, 2022).

appropriate only if "the need for removal . . . will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b).

The father maintains that because he was "ill" and "unable to participate" in the termination hearing, he should have been granted additional time "to be heard on issues central to whether termination of his parental rights was necessary," even though his "overall engagement in services was limited." Under this record, we cannot find that additional time would result in a different outcome for the father.

The mother claims that she should have been granted additional time because she "had made ongoing progress at the time of the termination hearing" "and there was no evidence that an additional six-month period would have jeopardized the child's safety or well-being." But the court had already granted the mother an informal extension by continuing the termination hearing for three months due to her recent progress. During that extension, the mother was discharged from treatment for non-attendance and failed to attend drug screens. There is no indication the mother will be able to safely parent this child in the near future, and he should not be forced to endlessly await her maturity. *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000).

We cannot point to any "specific factors, conditions, or expected behavioral changes" that would alleviate the need for removal at the end of an extension. Iowa Code § 232.104(2)(b). Under these circumstances, we conclude that an extension of time for either parent is unwarranted.

## DISPOSITION

Having addressed the issues raised in the parents' separate appeals, we affirm the termination of their parental rights.

**AFFIRMED ON BOTH APPEALS.**